**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

14 - 0 0 0 0 4 2 6

| | |
|---|---|
| **Tyrita Thomas** | ) |
| **4308 Lyons Street** | ) CIVIL COMPLAINT |
| **Temple Hills, MD 20748** | ) |
|     **Plaintiff,** | ) **For Violations of the D.C. Human Rights** |
| | ) **Act, Title VII, the D.C. Family Medical** |
|     **vs.** | ) **Leave Act, the Family Medical Leave Act,** |
| **District of Columbia.** | ) **the D.C. Comprehensive Merit Personal Act** |
|     **Defendant.** | ) **& the Fair Labor Standards Act** |
| ------------------------------------------------- | ) |
| **Serve** | ) **Jury Demand** |
| Mayor Vincent Gray | ) |
| District of Columbia | ) |
| 1350 Pennsylvania Ave. NW | |
| Washington D.C. 20004 | |

Attorney General, Irvin B. Nathan
District of Columbia
Office of the Attorney General
441 4th Street, NW, Washington, DC 20001

RECEIVED
Civil Clerk's Office
JAN 2 4 2014
Superior Court of the
District of Columbia
Washington, D.C.

## INTRODUCTION

Plaintiff Ms. Tyrita Thomas by and through her undersigned attorney Dhali PLLC brings

this action against the Defendant District of Columbia for retaliation as under Title VII, 42

U.S.C. § 2000 (e) *et. seq.,* and the D.C. Human Rights Act (DCHRA), **§** 2-1401-01 *et.seq.*;

violations of the D.C. Family Medical Leave Act (DCFMLA) D.C. Code § 32-501 *et. seq,* the

Family Medical Leave Act (FMLA) and for non-payment of overtime wages under the D.C.

Comprehensive Merit Personal Act (CMPA) and the Fair Labor Standards Act (FLSA).

Ms. Thomas is a fifteen (15) year veteran of the D.C. Metropolitan Police Department

(MPD). She was first hired by the MPD in 1995, only to leave the Department in 2008, for a two

year stint at the Arlington Police Department. On November 7, 2010, she returned to the MPD as

a Supervisory Fingerprint Specialist at an annual salary of $92,000. She was terminated by the MPD on February 15, 2012 for her prior protected activities and request for medical leave.

On May 27, 2011, she worked overtime for the MPD per the request of her police Captain Samuel Snyder. To date, she has never received the final wages for this overtime work performed.

Also sometime in May 2011, her supervisor, Mr. Gregory Hudson, Manager of the Fingerprint Analysis Branch held her to a different time and attendance standard than her similarly situated comparator, in this case male Supervisory Fingerprint Specialist Mr. Ralph Vinson. Mr. Hudson also assigned her greater duties.

In July 2011, Ms. Thomas complained to her second level supervisor Captain Samuel Snyder about the unfair treatment at the workplace; in August 2011, she complained to her Division Chief and in September 2011, she filed a complaint with the MPD Equal Employment Opportunity (EEO).

For engaging in protected activity, the MPD subsequently retaliated against her by issuing Ms. Thomas a "Letter of Admonition" on September 29, 2011 for a July 26, 2011 incident. They also wrote her up for neglect of duty in December 2011, for not completing her staff's performance evaluations, never mind the fact that she actually did so. The MPD then subsequently terminated her on February 15, 2012 while she was out on FMLA leave.

On July 11, 2013, the D.C. Office of Human Rights (OHR) issued a probable cause finding for violation of the DCFMLA.

Consequently, an action for damages now follows.

## I.    PARTIES

1. Tyrita Thomas is an African American female. She was a Fingerprint Examiner at the FBI from 1984-1995 and a Fingerprint Specialist for the MPD from 1996-2008. She had a brief stint with the Arlington Police Department from 2008-2010, and returned to the MPD as a Supervisory Fingerprint Specialist on November 7, 2010 until her termination on February 15, 2012.  She is an employee under D.C. Code § 2-1401.02 (9) of the DCHRA; under D.C. Code 32-501(1) of the DCFMLA; under D.C. Code § 1-603.01 of the CMPA; under 42 U.S.C. 2000 (e) *et.seq.*,of Title VII ; under 29 U.S.C § 2611 *et.seq.,* of the FMLA and 29 U.S.C § 203 of the FLSA.

2. The D.C. Metropolitan Police Department is the primary law enforcement agency for the District of Columbia government. The MPD has over 4,000 sworn and civilian members serving the city, which is divided into seven police districts, each of which is further subdivided into seven or more police service areas. The MPD is an employer as under § 2-1401-01 *et.seq*, of the DCHRA; D.C. Code 32-501(2) of the DC FMLA; D.C. Code § 1-603.01 of the CMPA; 42 U.S.C. § 2000 (e) *et.seq.*,of Title VII; 29 U.S.C. § 2611 *et.seq.,* of the FMLA and 29 U.S.C § 203 of the FLSA.

3. Under Division 1, Title 5, Chapter 1 of the D.C. Code 5-105 *et seq.*, Cathy Lanier is the Chief of Police of the MPD and as the Agency Chief is responsible for overseeing MPD's rules and regulations including the District and Federal laws, arising under this action.

## II.    JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over her DCHRA claim under D.C. Code Ann. § 11-921; over her DCFMLA claim under D.C. Code § 32-510; her CMPA

claim under the provisions and subchapters of D.C. Code § 1-601 *et seq.*, her Title

VII claim under 42 U.S.C. 2000 (e) *et seq.*, her FMLA claim under 29 U.S.C. § 2611

*et.seq.,* and her FLSA claim under 29 U.S.C § 216 (b).

5.  This Court has personal jurisdiction as under D.C. Code § 13-422; D.C Code

§ 13-423 and/or D.C. Code § 2-1403.16.

6.  Venue is proper in the District because the Plaintiff worked in the District, was

terminated in the District and all the events in this action occurred in the District.

The MPD is also a branch of the D.C. Government, and all the records concerning

the allegation are also in the District.

### III.    EXHAUSATION OF ADMINISTRATIVE REMEDIES

7.  On January 25, 2012, Ms. Thomas filed a timely charge with the D.C Office of

Human Rights (OHR) alleging discrimination and retaliation as under the Human

Rights Act and the DCFMLA. The charge was also cross filed with the Equal

Employment Opportunity Commission (EEOC). The EEOC Charge Number is:

10C-2012-00091C

8.  On August 22, 2012, Ms. Thomas amended her prior filing and included the

additional charge of termination by the MPD.

9.  On July 7, 2013, the OHR made a probable cause finding that the MPD "failed to

address or unreasonably denied [Ms. Thomas'] request for medical leave"[1] as under

the DCFMLA.

10. The MPD made a timely filing for a motion for reconsideration with the OHR. On

August 27, 2013, the OHR issued an order denying MPD's motion.

---

[1] *Tyrita Thomas v. DC Metropolitan Police Department.* OHR Probable Cause Finding, Docket No. 12-096-DC
(CN) page 20 of 21 (July 7, 2013)

11. On November 8, 2013, the OHR scheduled Conciliation amongst the parties for 11 am. Her counsel arrived at 10:20 am. Minutes before the start of Conciliation, as an act of defiance and arrogance, the MPD sent an email to OHR, saying they would not be attending the Conciliation.

12. As more than 180 days had passed since Ms. Thomas' January 25, 2012 administrative filing with the OHR and the EEOC, a Notice to Sue was requested on January 16, 2014.

13. Ms. Thomas has no further administrative obligations.

## IV.   STATEMENT OF FACTS

14. Ms. Thomas continued her employment at the MPD as a Supervisory Fingerprint Specialist on November 7, 2010[2]. She earned $92,000 a year. At the time of her termination she was also earning $92,000 per year and had a grade 13 classification. As a Supervisory Fingerprint Specialist her duties was to process physical evidence, testify in court proceedings, attend conferences on fingerprint policies and procedures and was also responsible for overseeing the work of her subordinates. She was the Supervisor of the "Latent Fingerprint Section" and oversaw the work of eleven (12) other Fingerprint Specialists, one (1) secretary, one (1) intern and five (5) Fingerprint Examiners/ AFIS Monitors of the Automated Fingerprint Identification Section (AFID). She is also entitled to overtime wages as under the CMPA and the FLSA.

---

[2] As mentioned in ¶ 1, she was previously employed with the MPD from 1996-2008.

15. She reported to Mr. Gregory Hudson, Manager of the Fingerprint Analysis Branch and to Captain Samuel Snyder (male). Her comparator also reporting to Mr. Hudson and Captain Snyder, is male Supervisory Fingerprint Specialist Mr. Ralph Vinson.

16. As part of Ms. Thomas' duties she is required to sign in and out of the workplace on a "time and attendance" sheet (T&A). This so the MPD may pay her for the hours worked. Her male comparator and other MPD employees, including Captain Snyder was also required to do the same. For the majority of her employment, she would always record her start and end time on the T&A sheet. Occasionally however, she would be unable to do so, because Captain Snyder would remove the sheet and take it with him. There was therefore no T&A sheet to complete. As a consequence, even other employees were unable to record their time.

17. Around May 2011, her supervisor Mr. Hudson started scrutinizing her T&A sheet, when she was unable to record her time. He would not do so for other employees including Mr. Vinson (her male comparator). This was only corroborated by the OHR investigation, who in their July 11, 2013 Probable Cause Finding state, "This witness [now retired] stated that Respondent [MPD] did single the Complainant [Ms. Thomas] out in regards to time and attendance. Respondent would scrutinize her leave request. No other employee (Male or Female) were subjected to the same treatment." Footnote. 27.

18.  On May 27, 2011, she was asked to work overtime by Captain Snyder. She informed him that because neither he nor her, had the time codes for overtime work, she was unable to work the overtime shift. Consequently, was she to do so, she would be unable to bill for the additional hours. Captain Snyder continued to insist

that she work beyond her regular hours. On this day and the next 3 days, Ms. Thomas worked the overtime shift. To date she has never received wages for work already performed. Nor was there any written or oral reason provided by MPD as for the delay in wages for overtime work, during these days.

19. As discovery has not been commenced, and the time sheets are in the possession of the employer the MPD, upon information and belief, she maybe owed $400 for overtime work.

20. Around this time, her workload for her division increased. While continuing to do this work, she however mentioned to her supervisor why her colleague Mr. Vinson was not being assigned the same quantity of work. No response was forthcoming.

21. In July 2011, Ms. Thomas complained to Captain Snyder about the unfair treatment at the workplace, in this case the over scrutinization of her T&A sheets and the unequal distribution in work; in August 2011, she complained to her Division Chief and in September 2011, she filed a complaint with the MPD Equal Employment Opportunity (EEO).

22. On September 29, 2011, the MPD subsequently retaliated against her by issuing Ms. Thomas a "Letter of Admonition" for a July 26, 2011 incident. She refused to sign this document.

23. On or about December 1, 2011, Ms. Thomas was told to complete her staff's performance evaluations. The 14 evaluations[3] in turn had to be inputted into the MPD's computer files and system, and were due by the close of business December 2, 2011.

---

[3] These performance evaluations were for 11 Fingerprint Specialists, 1 secretary and 1 intern.

24. By early next day or December 2, 2011, Ms. Thomas had completed about half or 7 of the performance evaluations. Around noon or mid-day she was asked by Captain Snyder and Mr. Hudson to attend a meeting on the upcoming Forensic Laboratory. This meeting ended at 2:30 pm. Around 3pm, Captain Snyder and Mr. Hudson walk into her office and Captain Snyder asks "what time will the performance evaluations be complete?" She replies, "considering I have been in a meeting for two and a half hours, I may not be able to complete this until after 5pm." Captain Snyder looks at his watch, and says, "Well its 3pm now and I want to go home." She asks, "What is stopping you from going home?" He replies, "Chief said nobody can leave until we finish." Mr. Hudson and him then exit her office.

25. By 4:35pm, Ms. Thomas had completed a majority or ten (10) of the performance evaluations. She had three (3) more to complete. When she attempted to input the completed evaluations into the system, she kept receiving an error code. She called Mr. Hudson for help but she was unable to reach him. She then calls HR Specialist Ms. Kim Jones, who places her on hold for approximately seven (7) minutes. She then describes to Ms. Jones her error codes from the system. Ms. Jones remarks, "Tyrita, I thought you were not in; I was just speaking to Mr. Hudson and he asked that all your performance evaluations be transferred to him, and that is why you are receiving the error codes."

26. Frustrated, she sends an email to Mr. Hudson at 5:15 pm saying that she was aware that he (Mr. Hudson) had transferred her assignment (of completing performance evaluations) to him, and had also taken the credit for completing all her work, in this

case, by placing his and Mr. Vinson's (comparator male Supervisory Fingerprint Specialist) signature for the performance evaluations she had completed.

27. A few days after, she was subsequently written up by the MPD for Neglect of Duty for: not completing any of the performance evaluations of her staff (!).

28. The MPD would only escalate their impudence, by terminating her a month later.

29. Sometime after the write up for neglect of duty, Ms. Thomas sought sick leave, as she was feeling depressed and anxious from her work conditions.

30. On December 16, 2011, Ms. Thomas submits a leave request for eight hours of sick leave.

31. On or about December 20, 2011, she contacts Captain Snyder to inform him of her request for sick leave. Unable to reach him at his desk, she then contacts her manager Mr. Hudson. She leaves a voice message with Mr. Hudson, saying that she is out on sick leave and that if he needed to speak with her, he is to call her. Also prior to December 2011, it was acceptable and customary to simply leave a message with her supervisors in regards to the request for sick leave[4].

32. Neither Captain Snyder or Mr. Hudson returned her calls on this day. (Infact it was not until ten days later or December 30, 2011, that Mr. Hudson calls her to inform her that she is now on absent on leave without pay status status

---

[4] The 2008 FMLA regulations provide that an employee needing FMLA leave must follow the employer's usual call in procedures. 29 C.F.R. Part 825. § 825.302. In here, and this was also documented in OHR's Probable Cause finding (page 7), it seemed that prior to her December 2011 request for FMLA leave, the usual procedure was simply to call in and inform her supervisors. Consequently, the MPD are now estopped from demanding a higher standard of notice of FMLA leave. *See Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009) ("Equitable estoppel is available to prevent a company from contesting an employee's right to assert a claim under the FMLA."); see also *Murphy v. FedEx Nat'l LTL Inc.* Case No. Nos. 09-3473, 09-3518 (8th Cir. 2010); *Saenz v. Harlingen Medical Center*, 613 F.3d 576 (5th Cir. 2010) (summary judgment is excluded by fact issue as to whether employer's internally created heightened notice requirement applied to employees absence from work of which employer had actual notice).

33. Unable to reach her supervisors Captain Snyder or Mr. Hudson, on December 20, 2011, she then calls the MPD Administrative Assistant and requests an FMLA packet[5]. Under the regulations, once an employee makes a request for FMLA leave, the employer must provide the employee at least 15 days to submit a medical certification[6]. She thus had until January 4, 2012 to submit her medical certification.

34. On or about late December 2011 (perhaps on December 30, 2011) Ms. Thomas's father Mr. Benjamin Thomas (also an MPD employee) submitted on his daughter's behalf a doctor's note[7] and a completed request for advanced sick leave.

35. On January 1, 2012, the MPD denied this leave and placed her on "Absent without leave" (AWOL) status effective from this day[8].

36. On January 10, 2012, MPD HR employee Mr. Matthew Molina returns her FMLA packet and doctor's note to Mr. Benjamin Thomas (father of Ms. Thomas). The next day Ms. Thomas calls Mr. Molina and enquires why her FMLA packet was returned; she was told that her doctor needs to complete the packet. This completed packet is returned to her supervisor Mr. Hudson on January 19, 2012.

---

[5] Under the Notice requirements of the FMLA, when Ms. Thomas placed this call and requested FMLA leave, the employer was on notice of her FMLA rights. *See Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 571 572 (6th Cir. 2010) ("To claim FMLA leave when the circumstances giving rise to the need for such leave are not foreseeable, an employee must give notice to her employer "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2006). "The employee need not expressly assert rights under the FMLA or even mention the FMLA."); *Pendarvis v. Xerox Corp.*, 3 F. Supp. 2d 53, 56 (D.D.C 1998) (Notice is a jury issue."The jury also will have to consider whether plaintiff gave reasonable notice to her employer of the need for leave or the reasons for her absences, see 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303(a); 4 D.C. Mun. Regs. § 1608, and whether those absences were excused or should have been -- a factual matter requiring the jury to evaluate the relative credibility of plaintiff and her supervisor.")
[6] 29 C.F.R.§ 825.305 (b)
[7] The doctor's note is dated Dec 21, 2011 and it says, "The above patient was seen today and is ordered to be away from her place of work until further notice!"
[8] As mentioned earlier in this paragraph, under the regulations Ms. Thomas had 15 days to provide MPD with a medical certification. This 15 days expired on January 4, 2012. MPD placed her on AWOL status prior to the expiry of the 15 days, or on January 1, 2012. The 6th Circuit in *Branham v. Garnett Satellite Info. Network Inc.,* 619 F.3d 563 (2010) held that an employer violates the FMLA, if it terminates an employee requesting FMLA leave before giving her the full 15 days to provide her medical certification.

37. On January 31, 2012, the MPD Internal Affairs Division delivered her a letter informing her of her termination, it was to become effective on February 15, 2012[9].

## V.   CAUSE OF ACTIONS
### 1ST Cause of Action: Retaliation As Under the DCHRA

38. Plaintiff reincorporates by reference all the allegations above.

39. At all pertinent times Defendant was an employer subject to the provisions of the D.C. Human Rights Act (DCHRA) § 2-1401 *et.seq* of the District of Colombia Code.

40. At all pertinent times the Plaintiff Ms. Tyrita Thomas was an employee entitled to protection under the DCHRA.

41. The DCHRA makes it an "unlawful discriminatory practice to coerce, threaten, retaliate against or interfere with any person in the exercise or enjoyment of , or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter." D.C Code § 2-1401 *et.seq*

42. Ms. Thomas engaged in protected activity and opposition to practices made unlawful under the DCHRA while employed by the Defendants.

43. As a result of her protected activity and opposition to practices made unlawful under the DCHRA, Ms. Thomas was subjected to an adverse employment action, including, a write up and subsequent termination.

---

[9] Ms. Thoams' facts in here are thus similar to the plaintiff in *Boyd Richards* where the Court found an FMLA violation. *Boyd Richards v. De Jongh,* Case No. 10-45 (Virgin Islands. Dist Ct. 2012) ("plaintiff has alleged that she requested FMLA leave. She has asserted that she notified her employer of her intention to be absent from work for portions of two months in order to diagnose and receive care for an eye injury or condition. During an absence of less than 12 weeks, her employer initiated termination proceedings. Plaintiff has thus alleged a plausible violation of the FMLA under 29 U.S.C. § 2615(a)")

44. A casual connection exists between Ms. Thomas' protected activity and the adverse

employment actions taken by Defendants, which might dissuade a reasonable worker

from making or supporting a charge of discrimination.

45. Defendants' acts of retaliation caused Ms. Thomas to suffer economic losses, mental

and emotional distress, embarrassment, humiliation and indignity.

46. This intentional, reckless, and/or willful retaliation by the part of Defendants

constitutes a violation of Ms. Thomas' statutory rights under the DCHRA.

47. By reason of Defendants retaliation, the Plaintiff is entitled to all legal and equitable

remedies under the DCHRA, including her attorneys fees.

### 2nd Cause of Action: Unlawful Denial of DCFMLA Leave

48. Plaintiff reincorporates by reference all the allegations above

49. The D.C Family Medical Leave Act (DCFMLA) provides an eligible employee for a

total of sixteen (16) workweeks of medical leave during any twenty four (24) month

period when the employee becomes unable to perform the functions of her job. An

employee may bring a claim as under the DCFMLA when she has suffered damages

as a result of the denial. *See* D.C. Code § 32-501 et. seq.

50. In order to prevail on her DCFMLA claim, she must (1) have a serious health

condition; (2) be unable to perform the functions of her job; (3) provides reasonable

notice to take leave to the MPD; (4) MPD wrongfully denied the leave and (5) she

suffers a legal injury because of the denial. *See* D.C. Code 32-507; *Pendarvis v.

Xerox*, 3 F.Supp. 2d. 53, 55 (D.D.C. 1998).

51. Ms. Thomas had a serious health condition of depression and anxiety which

rendered her unable to work. Ms. Thomas provided her employer with notice to take

leave, including a December 21, 2011 note from her doctor, who mentions that she is to be out of work until further notice. The MPD denied this leave, and she suffered legal injury when MPD classified her as being absent without leave and subsequently terminated her on February 15, 2012. *See* OHR Probable Cause Finding p. 17 of 21 (July 11, 2013).

52. Defendants acts caused Ms. Thomas to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

53. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Ms. Thomas' statutory rights under the DCFMLA.

54. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including her attorney's fees.

## 3rd Cause of Action. Retaliation as Under the DCFMLA.

55. Plaintiff reincorporates by reference all the allegations above.

56. Under the DCFMLA it is illegal for the Defendants to interfere with, restrain or deny, the exercise, or the attempt to exercise any right created by the DCFMLA. *See* D.C Code § 32-507.

57. It is also illegal for the Defendants to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the DCFMLA. *See* D.C Code § 32-507.

58. In the present instance, the Plaintiff engaged in protected activity when she requested FMLA leave on December 2011; she then suffered an adverse employment action when she was issued a letter of admonition, charged with 80 hours of absent without leave (AWOL) and was subsequently terminated from her

employment on February 15, 2012. Because of the close proximity of the adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing a claim.

59. Defendants' acts caused Ms. Thomas to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

60. This intentional, reckless, and/or willful act by the part of Defendants constitutes a violation of Ms. Thomas' statutory rights under the DCFMLA.

61. By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including her attorney's fees.

### 4rd Cause of Action. Overtime Wages as Under the CMPA.

62. Plaintiff reincorporates by reference all the allegations above.

63. The Comprehensive Merit Personal Act (CMPA) governs overtime wages for D.C. government employees and employees of the MPD. *See* D.C. Code § 1-601 *et. seq.*

64. Ms. Thomas worked additional or overtime hours on or about May 27, 2011 and continued to do so for the next 3 days. To date she has not been paid her wages; nor has the MPD provided her with any oral or written justification in good faith or otherwise denying her claim for overtime wages.

65. Defendant MPD's acts caused Ms. Thomas to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

66. This intentional, reckless, and/or willful act by the part of Defendant MPD constitutes a violation of Ms. Thomas' statutory rights under the CMPA.

67. By reason of Defendant MPD's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the CMPA, including her attorney's fees.

## 5TH Cause of Action: Retaliation as Under Title VII

68. Plaintiff reincorporates by reference all the allegations above.

69. At all pertinent times Defendant was an employer subject to the provisions of Title VII.

70. At all pertinent times Plaintiff Ms. Tyrita Thomas was an employee entitled to protection under Title VII.

71. Title VII prohibits retaliation by an employer because an individual has engaged in protected activity. Ms. Thomas engaged in protected activity by participating and/or opposing to practices made unlawful under Title VII while employed by Defendant MPD.

72. As a result of her protected activity, participation and/or opposition to practices made unlawful under Title VII, Ms. Thomas was subjected to an adverse employment action, including, disciplinary action and termination.

73. A casual connection exists between Ms. Thomas' protected activity and the adverse employment actions taken by Defendants, which might dissuade a reasonable worker from making or supporting a charge of discrimination.

74. Defendants' acts of retaliation caused the Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

75. This intentional, reckless, and/or willful retaliation by the part of Defendants constitutes a violation of Plaintiff's statutory rights under Title VII.

76. By reason of Defendants' retaliation, Plaintiff is entitled to all legal and equitable remedies as under Title VII, including a claim for attorney's fees.

### 6th Cause of Action: Denial of Leave as Under the FMLA.

77. Plaintiff reincorporates by reference all the allegations above.

78. The Family Medical Leave Act (FMLA) provides an eligible employee for a total of
twelve (12) workweeks of medical leave during any twelve (12) month period when
the employee becomes unable to perform the functions of her job.

79. In order to prevail on her FMLA claim, she must (1) have a serious health condition;
(2) be unable to perform the functions of her job; (3) provide reasonable notice to
take sick leave to the MPD; (4) MPD wrongfully denied the leave and (5) she suffers
a legal injury because of the denial. *See Pendarvis v. Xerox*, 3 F.Supp. 2d. 53, 55
(D.D.C. 1998).

80. Ms. Thomas had a serious health condition of depression and anxiety which
rendered her unable to work. Ms. Thomas provided her employer with notice to take
leave, including a note from her doctor, who mentioned that she is to be out of work
until further notice. The MPD denied this leave, and she suffered legal injury when
MPD classified her as being absent without leave and subsequently terminated her
on February 15, 2012. *See* OHR Probable Cause Finding p. 17 of 21 (July 11, 2013).

81. Defendants' acts caused Ms. Thomas to suffer economic losses, mental and
emotional distress, embarrassment, humiliation and indignity.

82. This intentional, reckless, and/or willful act by the part of Defendants constitutes a
violation of Ms. Thomas' statutory rights under the FMLA.

83. By reason of Defendants' actions, the Plaintiff is entitled to all legal, liquidated and
equitable remedies under the FMLA, including her attorney's fees.

### 7th Cause of Action: Retaliation as Under the FMLA.

84. Plaintiff reincorporates by reference all the allegations above.

85. Under the FMLA it is illegal for the Defendants to interfere with, restrain or deny,

    the exercise, or the attempt to exercise any right created by the FMLA. *See* 29 U.S.C

    § 2615.

86. It is also illegal for the Defendants to discharge or discriminate in any manner,

    against an individual for opposing any practice made unlawful under the FMLA. *See*

    29 U.S.C § 2615.

87. In the present instance, the Plaintiff engaged in protected activity when she

    requested FMLA leave on December 2011; she then suffered an adverse

    employment action when she was issued a letter of admonition, charged with 80

    hours of absent without leave (AWOL) and was subsequently terminated from her

    employment on February 15, 2012. Because of the close proximity of the adverse

    actions, it creates an inference of a causal connection that would dissuade a

    reasonable employee from filing a claim.

88. Defendants' acts caused Ms. Thomas to suffer economic losses, mental and

    emotional distress, embarrassment, humiliation and indignity.

89. This intentional, reckless, and/or willful act by the part of Defendants constitutes a

    violation of Ms. Thomas' statutory rights under the FMLA.

90.  By reason of Defendants actions, the Plaintiff is entitled to all legal, liquidated and

    equitable remedies under the FMLA, including her attorney's fees.

### 8th Cause of Action. Non-Payment of Overtime Wages as Under the FLSA

91. Plaintiff reincorporates by reference all the allegations above.

92. The Fair Labor Standards Act (FLSA) governs overtime wages for D.C. government employees and employees of the MPD.

93. Ms. Thomas worked additional or overtime hours on or about May 27, 2011 and continued to do so for the next 3 days. To date she has not been paid her wages; nor has the MPD provided her with any oral or written justification in good faith or otherwise denying her claim for overtime wages.

94. Defendant MPD's acts caused Ms. Thomas to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

95. This intentional, reckless, and/or willful act by the part of Defendant MPD constitutes a violation of Ms. Thomas' statutory rights under the CMPA.

96. By reason of Defendant MPD's actions, the Plaintiff is entitled to all legal, liquidated damages, and equitable remedies under the CMPA, including her attorney's fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Ms. Tyrita Thomas prays as follows:

a. That this Court enter judgment against the Defendants;

b. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, liquidated damages, reinstatement, compensatory and emotional damages for the financial and emotional harm caused by Defendants, including pre-judgment and post judgment interest and any other damages permitted in an amount of one million dollars ($1,000,000.00) and/or any other relief the Court deems fit

That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of

attorney's fees and expert fees.

## VI.   JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

/s/Arinderjit Dhali, Esq.
D.C. Bar No. 495909
Dhali PLLC
1629 K. Street. NW. Suite 300.
Washington D.C. 20001
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
*Attorney for Plaintiff Tyrita Thomas*
*Friday Jan 24, 2014.*

## Certificate of Service

The forgoing Complaint, Summons and Order was submitted via first class U.S. mail with return receipt requested on 1/24/2014 to:

Mayor Vincent Gray
District of Columbia
1350 Pennsylvania Ave. NW
Washington D.C. 20004

Attorney General, Irvin B. Nathan
District of Columbia
Office of the Attorney General
441 4th Street, NW, Washington, DC 20001