_____

|                              |     |
| --- | --- |
| **Tyrita Thomas,**           | )   |
|                              | )   |
| **Plaintiff,**               | )   |
|                              | )   |
| **v.**                       | )   |   **Civil No. 14-cv-00335 (APM)**
|                              | )   |
| **District of Columbia,**    | )   |
|                              | )   |
| **Defendant.**               | )   |

_____ )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Tyrita Thomas filed this lawsuit against her former employer, Defendant District of Columbia, alleging that she was unlawfully denied leave under the Family Medical Leave Act ("FMLA") and the District of Columbia Family Medical Leave Act ("DCFMLA"). Plaintiff worked most recently as a fingerprint specialist in the District of Columbia Metropolitan Police Department. She asserts that she was illegally denied leave under the FMLA and DCFMLA beginning in late 2011, when she began to suffer from a serious health condition, through February 2012, when she was terminated from her position. Plaintiff also alleges that she was retaliated against both for seeking FMLA leave and for filing an internal complaint alleging sex discrimination in mid-2011.

This matter is before the court on Defendant's Motion for Summary Judgment. Defendant asserts that Plaintiff was not entitled to leave under the FMLA or DCFLMA because (1) she did not suffer from a serious medical condition and (2) she did not provide the Police Department with the requisite notice in order to request FMLA leave. Defendant further contends that Plaintiff was

not retaliated against, but instead was disciplined and then terminated due to her own insubordination, neglect of duty, and AWOL status.

Having reviewed the evidence, the court finds that a reasonable jury could conclude that Plaintiff was improperly denied leave under the FMLA and the DCFMLA. The court also finds that a reasonable jury could conclude that Plaintiff was retaliated against for seeking such leave. However, the court finds that no reasonable jury could conclude that Defendant retaliated against Plaintiff because she previously had filed a sex discrimination complaint. The court therefore grants in part and denies in part Defendant's Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    *Plaintiff's Workplace Discipline*

Plaintiff Tyrita Thomas worked at the District of Columbia Metropolitan Police Department ("MPD") from 1995 to 2008, and returned in 2010 as a supervisory fingerprint specialist. Def.'s Mot. for Summ. J., ECF No. 23, Statement of Undisputed Material Facts, ECF No. 23-2 [hereinafter Def.'s Stmt.], ¶ 1; Pl.'s Opp'n to the District of Columbia's R.56 Motion for Summ. J., ECF No. 24 [hereinafter Pl.'s Opp'n], Plaintiff's Statement of Material Facts in Dispute, ECF No. 24-1 [hereinafter Pl.'s Stmt.], ¶ 1. Gregory Hudson was Plaintiff's direct supervisor after she returned to the MPD. Pl.'s Opp'n, Ex. A, Dep. of Gregory Hudson, ECF No. 24-2 [hereinafter Hudson Dep.], at 11. Hudson's direct supervisor, in turn, was Captain Samuel Snyder. Hudson Dep. at 14.

Beginning in or around May 2011, Plaintiff claims that Hudson began scrutinizing her time sheets more carefully than the time sheets of her male colleague, Ralph Vinson. Pl.'s Opp'n, Ex. E, Aff. of Tyrita Thomas, ECF No. 24-6 [hereinafter Thomas Aff.], at 2. Then, on or around July 26,

2011, "for reasons unknown," Hudson "got close to [Plaintiff's] face" and began "berating [her] and yelling to [her] face." *Id*. Hudson characterized the incident as a "loud discussion" following Plaintiff's refusal to do work assigned to her. Hudson Dep. at 41-42. As a result of this argument, Defendant contends that Plaintiff "took sick leave without prior approval." Def.'s Stmt. ¶ 2.

At some point after the argument, Plaintiff complained to her supervisors about the incident. Ultimately, in September 2011, she filed a complaint with the MPD's Equal Employment Opportunity office, alleging sex discrimination by Hudson. Thomas Aff. ¶ 12; *see also* Pl's Opp'n, Ex. L, Dep. of Tyrita Thomas, ECF No. 24-13 [hereinafter Thomas Dep.], at 61-65. MPD eventually resolved the matter by issuing Plaintiff a Letter of Admonition for leaving work without approval in September 2011, which she refused to sign out of protest. Thomas Aff. ¶ 13; Def.'s Stmt. ¶ 2. Hudson also was issued a Letter of Admonition as a result of the incident. Hudson Dep. at 42-44.

On December 2, 2011, Plaintiff missed the deadline for submitting evaluations for her approximately 13 subordinates and then, ignoring the requests of her supervisors, left work before completing them. Def.'s Mot. for Summ. J., Ex. 18, Final Investigative Report with Recommendations Regarding Allegations of Insubordination and Neglect of Duty on the Part of Civilian Tyrita Thomas of the Fingerprint Analysis Branch, ECF No. 23-18 [hereinafter Dec. 19 Investigative Report], at 5; Thomas Dep. at 113. An internal MPD review found Plaintiff to have been (1) neglectful of her duties because she had failed to complete the evaluations and (2) insubordinate because she had left work before the evaluations were complete, despite the directives of her supervisors to remain on duty. Dec. 19 Investigative Report at 6. According to Plaintiff, a computer error—rather than her own neglect—caused her to be unable to finish her evaluations. Thomas Aff. ¶¶ 17-23.

On December 14, 2011, Plaintiff was asked to submit a signed statement regarding her inability to complete the evaluations. Def.'s Stmt. ¶ 4. Plaintiff left work instead. Hudson Dep. at 90-94. A second MPD review found that Plaintiff was "AWOL" when she left work without permission on that date. Def.'s Mot. for Summ. J., Ex. 15, Final Investigative Report with Recommendations Regarding Allegations of Insubordination and Neglect of Duty on the Part of Civilian Tyrita Thomas of the Fingerprint Analysis Branch, ECF No. 23-15 [hereinafter Jan. 10 Investigative Report], at 9. Unknown to all at the time, December 14 would be the last day Plaintiff would report for work. From December 15 through December 19, 2011, Plaintiff was out on approved annual leave, Pl.'s Stmt. ¶ 2. And then, on December 20, 2011, Plaintiff left a voicemail for Hudson requesting eight hours of sick leave and was out sick. *See* Thomas Aff. ¶ 28.

### 2. *Plaintiff's Leave Request*

Whether Plaintiff was entitled to leave under the FMLA in the days following December 20, 2011, is the crux of the parties' dispute. Defendant's position is that Plaintiff did not return to work after her request for sick leave and did not answer multiple phone calls by Hudson inquiring as to her whereabouts and, as a result, "was essentially AWOL for weeks on end." Def.'s Mot. for Summ. J., Mem. of Points and Authorities in Support of District of Columbia's Mot. for Summ. J., ECF No. 23-1 [hereinafter Def.'s Mot.], at 3, 13. Plaintiff, on the other hand, says that she visited her doctor on December 21, 2011, who directed her to stay home from work. Thomas Aff. ¶ 29. After she visited her doctor, she then called both Captain Snyder and Hudson, and left Hudson a voicemail alerting him that she was "going to be out on extended medical leave because of depression and my doctor's request. Call me if you need to speak to me about this." *Id.* ¶ 31. For his part, Hudson did not recall receiving such a voicemail from Thomas. Hudson Dep. at 104.

With the help of some coworkers, Plaintiff acquired an application for FMLA leave on or after December 21, 2011. Thomas Aff. ¶ 34. On or around December 31, 2011, Plaintiff's father submitted the application to the MPD on her behalf. Thomas Aff. ¶ 35. Plaintiff sought "240 hours of medical leave because of a serious medical condition." Pl.'s Opp'n, Ex. G, December 31, 2011 FMLA Leave Application, ECF No. 24-8 [hereinafter December 31 Application], at 3. The application did not, however, specify the nature of the condition. Plaintiff requested that the leave be in a "continuous block of time," starting on December 20, 2011, nine days before she submitted the application, to "present." *Id*. Plaintiff also indicated that the leave requested was "[i]ntermittently as medically necessary." *Id*. She attached to the application a handwritten note from her treating physician, Dr. Robert Ball, dated December 21, 2011, which stated: "The above patient was seen today and is required and ordered to be away from her place of work until further notice!" *Id*. at 1; Thomas Aff. ¶ 35.

The parties agree that Plaintiff's initial application for FMLA leave was incomplete. Def.'s Stmt. ¶ 17; Pl.'s Stmt. ¶ 6. It did not contain the required medical certification from her doctor—the handwritten note was insufficient. Def.'s Stmt. ¶ 17; *see also* Pl.'s Opp'n, Ex C., Dep. of Diana Haines Walton, ECF No. 24-4 [hereinafter Walton Dep.], at 20 (noting that a FMLA application packet includes both the application and "the doctor's certificate" that must be completed). The incomplete FMLA leave application was returned to Plaintiff on or about December 31, 2011, with instructions to resubmit it. Hudson Dep. at 99-100.

The very next day, on January 1, 2012, MPD placed Plaintiff on AWOL status because she had not "return[ed] to work" after her absence beginning in mid-December 2011, despite numerous phone calls by MPD employees trying to find her. Def.'s Stmt. ¶ 19; Def.'s Mot. for Summ. J., Ex. 14, Personnel Action Request Form, ECF No. 23-14, at 1; *see also* Thomas Aff. ¶ 37. At a

meeting on January 13, 2012, MPD officials decided to terminate Plaintiff. Def.'s Mot. for Summ. J., Ex. 10, Affidavit of Gregory Hudson, ECF No. 23-10 [hereinafter Hudson Aff.], ¶ 9.

Unaware of the termination decision, Plaintiff submitted a complete application for FMLA leave on January 19, 2012. Def.'s Stmt. ¶ 22; Pl's Stmt. ¶ 9. The application included a medical certification from Dr. Ball, which stated that Plaintiff suffered from "Depression/Anxiety – Work Induced" that began on approximately November 9, 2011. Def.'s Mot. for Summ. J., Ex. 16, Medical Certification by Health Care Provider, ECF No. 23-16 [hereinafter Medical Certification]. Dr. Ball estimated that the "probable duration of her condition" would continue until February 16, 2012. *Id.* Asked to certify whether it will "be necessary for the employee to take work <u>only intermittently</u> or <u>to work on less than full schedule</u> as a result of the condition," Dr. Ball answered the question "Yes" and estimated the probable duration of such reduced work availability to last until February 16, 2012. *Id.* In response to another question, Dr. Ball answered that Plaintiff was "Presently Incapacitated [Duration] Approx. 3 [months]." As for Plaintiff's treatment needs, Dr. Ball certified that Plaintiff would have to be "absent from work" to attend "2 [psychotherapy] sessions per week until further notice." *Id.* He estimated that it would take Plaintiff four hours to recover from each session. *Id.* She also would be treated by a prescription drug regimen. *Id.* Asked to certify whether the employee is "<u>unable to perform work</u>," Dr. Ball answered that Plaintiff would be able to "perform [her] job between treatments." *Id.*

On January 31, 2012, Defendant sent a letter to Plaintiff informing her that she was terminated from her position as of February 15, 2012. Def.'s Mot. for Summ. J., Ex. 17, Letter of Termination, ECF No. 23-17 [hereinafter Letter of Termination]. The letter stated that Plaintiff's termination was "based on cause (neglect of duty, inefficiency and abandonment)" and because she had "been in an Absence without Official Leave status (AWOL) since December 21, 2011." *Id.*

at 1. Plaintiff first learned of her termination when she spoke to Hudson by phone on February 2, 2012. Thomas Aff. ¶ 43.

## B.     Procedural History

Following her termination, Plaintiff filed a complaint with the District of Columbia's Office of Human Rights ("OHR"). *See generally* Pl's Opp'n, Ex. D, OHR Letter of Determination, ECF No. 24-5 [hereinafter OHR Letter]. On July 11, 2013, the OHR issued its Letter of Determination, finding that Defendant either had failed to address or unreasonably denied Plaintiff's request for FMLA leave. OHR Letter at 17. The OHR also found, however, that there was no probable cause to believe that MPD had retaliated against Plaintiff under the FMLA or that Plaintiff was subjected to disparate treatment based on her sex. *Id*. at 21

On January 24, 2014, Plaintiff filed a complaint in the Superior Court of the District of Columbia. Compl., ECF No. 1-1. A month later, on February 28, 2014, Defendant removed the case to this court. *Id.* Defendant filed its Motion for Summary Judgment on July 17, 2015. ECF No. 23.

## III.   LEGAL STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are irrelevant or unnecessary' do not affect the summary

judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Liberty Lobby*, 477 U.S. at 248).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear" that a grant of summary judgment is appropriate. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). When considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. The court must "eschew making credibility determinations or weighing the evidence" on a motion for summary judgment. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). The non-movant's opposition, however, must consist of more than mere unsupported allegations; instead, it must be supported by affidavits, declarations or other competent evidence setting forth specific facts that show there is a genuine issue for trial. *See* Fed. R. Civ. P 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, the non-moving party is "required to provide evidence that would permit a reasonable jury to find [in his favor]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## IV.    DISCUSSION

### A.    The FMLA and the DCFMLA

Plaintiff brings claims under both the FMLA, 29 U.S.C. § 2601, *et seq*., and the DCFMLA, D.C. Code Ann. §§ 32-503, 32-507. The FMLA provides that an eligible employee is entitled to 12 weeks of leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Similarly, the DCFMLA provides that a covered employee who "becomes unable to perform the functions

of the employee's position because of a serious health condition" shall receive 16 weeks of protected medical leave during any 24-month period.  D.C. Code Ann. § 32-503(a).

Both the FMLA and the DCFMLA recognize two theories of recovery for statutory violations:  (1) the entitlement or interference theory, and (2) the retaliation or discrimination theory.  29 U.S.C. § 2615(a); D.C. Code Ann. § 32-507; *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160-61 (D.C. Cir. 2015); *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1075-76 (D.C. 2008) (recognizing that that DCFMLA's theories of recovery parallel the FMLA's). The first theory prohibits any person from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided by the statute.  29 U.S.C. § 2615(a)(1); *Wash. Convention Ctr. Auth.*, 953 A.2d at 1076.  The second theory makes it unlawful for an employer to discharge or discriminate in any manner against any individual for opposing any practice made unlawful by the statute.  29 U.S.C. § 2615(a)(2); *Wash. Convention Ctr. Auth.*, 953 A.2d at 1076.

In this case, Plaintiff contends both that MPD unlawfully denied her leave under the FMLA and DCFMLA, *see* Am. Compl., ECF No. 9, ¶¶ 48-54, 77-83,[1] and that it retaliated against her for applying for such leave, *id.* ¶¶ 55-61, 84-90.  The court first considers whether a reasonable jury could conclude that Defendant illegally denied Plaintiff's entitlement to leave under the FMLA and DCFMLA.  It then turns to Plaintiff's claim that she faced retaliation because she applied for such leave.

---

[1] The court reads Plaintiff's complaint to advance only a theory of unlawful denial of leave, as distinct from an unlawful interference with her right to seek leave under the FMLA.  *See* Compl. ¶¶ 48-54, 77-83.  The later claim would have required Plaintiff to show that "her employer interfered with, restrain[ed], or denied the exercise of or the attempt to exercise, any right provided by the FMLA and that she was prejudiced thereby." *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 7 (D.C. Cir. 2010) (quotations and citations omitted).  As noted below, the parties agree that those two elements do not define the unlawful denial claim that Plaintiff advances here.

*1.    Unlawful Denial of Leave*

The parties agree that, under the FMLA and DCFMLA, to prove that an employer unlawfully denied an individual's right to leave, the plaintiff must show that (1) she had a serious health condition; (2) her condition rendered her unable to perform the functions of her job; (3) she gave her employer reasonable notice of her need to take leave and the reasons for doing so; (4) the employer wrongfully denied the leave; and (5) plaintiff suffered a legal injury as a result of the denial. *See* Am. Compl. ¶¶ 50, 79; Def.'s Mot. at 7 (both parties citing *Pendarvis v. Xerox Corp.*, 3 F. Supp. 2d 53, 55 (D.D.C. 1998)).  Defendant argues that Plaintiff is unable to prove the second and third elements of her claim.  The court considers these arguments in turn.

a.    <u>Inability to perform the functions of her job</u>

The then-applicable regulations implementing the FMLA provided that employers were required to grant leave to eligible employees for, among other things, "a serious health condition that makes the employee unable to perform the functions of the employee's job."  29 C.F.R. § 825.112 (2011).  Defendant does not contest that Plaintiff has shown that she suffered from a "serious health condition."  Def.'s Mot. at 7; 29 C.F.R. § 825.113 (2011) (defining the term "serious health condition").  Rather, it argues that Plaintiff cannot prove she was "unable to perform the functions of her job" because the medical certification from her doctor stated that she could work between treatments.  Def.'s Mot. at 7.  The court disagrees.

Under the pertinent FMLA regulations, "[a]n employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act[.]"  29 C.F.R. § 825.123(a) (2011).  Moreover, and critically important for present purposes, "[a]n employee who must be absent from work to receive medical

10

treatment for a serious health condition is considered to be unable to perform the essential functions of the position *during the absence for treatment*." *Id.* (emphasis added). Here, Plaintiff's treating physician, Dr. Ball, certified that it would be necessary for Plaintiff "to take work <u>only intermittently</u> or <u>to work on a less than full schedule</u> as a result of [her] condition." Medical Certification at 1. He also certified that Plaintiff would have to be "absent from work" to attend "2 [psychotherapy] sessions per week" and that each session would require four hours of recovery time for a three-month period. *Id.* at 2. These certifications show that, in Dr. Ball's estimation, Plaintiff would have to miss work to attend and recover from two psychotherapy sessions per week. She, therefore, was "[a]n employee who must be absent from work to receive medical treatment for a serious health condition" and was thus "unable to perform the essential functions of the position during the absence for treatment." 29 C.F.R. § 825.123(a). Dr. Ball's certifications are sufficient to create a jury question as to whether Plaintiff was "unable to perform the functions of the position" to qualify for FMLA leave.

The fact that Dr. Ball also stated that Plaintiff could work "between treatments," Medical Certification at 2, does not demand a contrary result. Defendant seems to take the view that an employee must be "continuously" unable to work to qualify for FMLA leave. *See* Def.'s Mot. at 9 (arguing that "Plaintiff's physician confirmed that it was necessary for the employee to miss work only intermittently or to work on a less than full schedule as a result of the condition . . . although not continuously"). The FMLA, however, does not impose such a stringent requirement. It permits an employee who has a "serious health condition that makes the employee unable to perform the functions of the position of such employee" to take leave "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(a)(1)(D), (b)(1). The court in *Hodges v. District of Columbia* recently rejected an argument strikingly similar to the one

Defendant makes here. No. 12-cv-1675 (TSC), 2016 WL 1222213, at *9 (D.D.C. Mar. 28, 2016) (rejecting argument that the plaintiff did not qualify for leave under the FMLA because her doctor's certification did not "indicate[ ] that he needed to be completely absent from work to complete treatment"). As here, the plaintiff in *Hodges* had obtained a physician's certification stating that he would have to be absent from work on an intermittent basis to receive medical treatment. The court in *Hodges* held, as this court does, that such a certification "demonstrates that Plaintiff's medical condition was a 'qualifying reason' for FMLA leave." *Id.*

Defendant's citation to *Anderson v. Discovery Commc'ns LLC*, 814 F. Supp. 2d 562 (D. Md. 2011), *aff'd* 517 Fed. Appx. 190 (4th Cir. 2013), *see* Def.'s Mot. at 8, does not compel a different result. The court in *Anderson* found that plaintiff's sleep disorder—which, according to her own doctor, did not significantly impair things like "focus, concentration, alertness, mood, [or] memory"—was not a "serious medical condition" for purposes of FMLA leave. *Id.* at 573. There, the accommodation that the plaintiff sought was that she be allowed to work "a standard eight-hour work day." *Id.* at 566. Such circumstances are quite different from those here, where Defendant does not even dispute that Plaintiff's condition is a "serious medical condition," and where, according to Plaintiff's doctor, Plaintiff would have to miss work twice a week for psychotherapy sessions and post-therapy recovery. Medical Certification at 2. Thus, *Anderson* is inapposite.

b.    Failure to give proper notice

Next, Defendant contends that Plaintiff has failed to assert an unlawful denial claim because she did not give MPD reasonable notice of her need to take leave and the reasons for doing so. The FMLA's protections will not apply if "timely and adequate communication is not given" by the employee to the employer, even if the employee has a serious health condition. *See*

*Ghawanmeh v. Islamic Saudi Acad.*, 857 F. Supp. 2d 22, 40 (D.D.C. 2012) (denying plaintiff's request for FMLA leave in part because she did not comply with the FMLA's notice requirement); *see also Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008). In other words, an employee seeking FMLA leave must "put [the] employer on notice that the protections of the Act may apply." *Smithfield Packing*, 545 F. Supp. 2d at 516. Defendant contends that summary judgment is warranted because Plaintiff's notice was deficient in two respects—its content and its timing. Once again, the court disagrees.

Under the FMLA regulations, the timing and content of an employee's notice turns on a threshold question: Is the need for leave foreseeable? *See* 29 C.F.R. §§ 825.302, 303 (2011). The court first addresses the timing element of adequate notice as applied to the record facts, and then the content element.

*Timing of FMLA Notice.* When the need for FMLA leave is foreseeable, an employee must give her employer notice at least 30 days before such leave is to begin. 29 C.F.R. § 825.302(a) (2011). If at least 30 days of notice is not possible, say, "because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency," an employee must give notice "as soon as practicable." *Id*. "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." *Id*. § 825.302(b). Similarly, when the need for leave is *not* foreseeable, an employee "must provide notice to the employer as soon as practicable under the facts and circumstances of [the] particular case." *Id*. § 825.303(a). For unforeseeable leave, "[i]t generally should be practicable for the employee to provide notice . . . within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." *Id.* For Plaintiff, that would have meant following the DCFMLA regulations, *see* Def.'s Mot. at 11, which provided

that "employees must notify their employers of their desire to take medical leave . . . 'not later than two (2) business days after the absence begins' if an emergency 'prevents an employee from notifying the employer of the need for medical leave prior to the first day of absence.'" *Hamilton v. Howard Univ.*, 960 A.2d 308, 317 (D.C. 2008) (quoting 4 DCMR § 1608.3).

Here, the record raises a genuine dispute of material fact as to whether the leave sought by Plaintiff was unforeseeable and whether she timely notified MPD of her need to take leave. Defendant argues that Plaintiff first notified the MPD of her need to take leave on December 31, 2011, when she submitted her FMLA application. Def.'s Mot. at 10-11. But Plaintiff's evidence, if believed, establishes that she provided adequate notice ten days *before* submitting her application. According to Plaintiff, she called in sick on December 20, 2011, and the next day, she visited her treating physician, Dr. Ball. Thomas Aff. ¶ 29. At the appointment, it appears that—for the first time—Dr. Ball diagnosed Plaintiff with anxiety and depression and prescribed her a regimen of medication for that diagnosis. *Id.*; Thomas Dep. 143: 17-18.[2] Dr. Ball also wrote a note during the appointment, which Plaintiff later submitted to her employer, stating that Plaintiff "was seen today and is required and ordered to be away from her place of work until further notice!" December 31 Application, at 1; Thomas Aff. ¶ 35.

From that evidence, a reasonable jury could infer that Plaintiff's need to take leave did not become foreseeable until Dr. Ball diagnosed her with anxiety and depression on December 21, 2011. If a jury were to so conclude, Plaintiff would be excused from the 30-day notice requirement, and she would have been required to notify MPD of her need for leave no later than

---

[2] Defendant argues that Plaintiff must have learned of her diagnosis earlier, by pointing to her own statement that she first saw Dr. Ball on November 9, 2011. Def.'s Reply Br., ECF No. 25, at 6 (arguing that "nothing in the record suggests even remotely that plaintiff suffered an emergency") (citing Thomas Aff. ¶ 30). Although Defendant is correct that December 21, 2011, was not the first time that Plaintiff saw Dr. Ball, it cites to no evidence that Dr. Ball, or any other physician, diagnosed Plaintiff with anxiety and depression before that date.

two days after her absence began. Plaintiff says she did notify MPD within this timeframe. She attested that, after seeing Dr. Ball, she left a voicemail for her superior, Hudson, stating that she would "be out on extended medical leave because of depression and my doctor's request. Call me if you need to speak to me about this." Thomas Aff. ¶ 31. Hudson, however, did not recall receiving such a voicemail from Thomas or any other communication from her. Hudson Dep. at 104; Hudson Aff. ¶¶ 5-6 ("Since that initial call on December 20, 2011, up until the date of her termination letter on January 31, 2012, Ms. Thomas had no additional contact with me or any other supervisors in her chain of command . . . . [and] made no effort to discuss her duty status or alert me or any other supervisor that she would require extended sick leave."). Whether Plaintiff, in fact, left such message on December 21, 2011—and thus whether Plaintiff provided timely notice of her need to take leave—will have to be decided by a jury.

Defendant argues that Plaintiff's notice was untimely for a second reason—she did not submit a completed leave application, including a final medical certification, until January 19, 2012, almost a month after she stopped coming to work. Def.'s Mot. at 13. That fact, however, does not disqualify Plaintiff from receiving FMLA leave. Defendant cites no federal or local regulation or MPD policy that specifies the timeframe in which an employee, after giving the requisite notice, must complete a formal application requesting leave. To the contrary, there is evidence in the record that, at least informally, MPD allows its employees up to 15 days to submit a medical certification after filing an initial application for leave. *See* Walton Dep. at 27 (testifying MPD would give an employee approximately "a pay cycle, two weeks, 14 or 15 days" to submit a medical certification). Although Plaintiff completed her application by January 19, 2012, 19 days after initially submitting it, Defendant by that time had already both placed Plaintiff on AWOL status (January 1, 2012) and decided to terminate her (January 13, 2012). Thus, Plaintiff's (at

most) four-day delay in completing her application could not have been the reason that Defendant denied her leave request.

*Content of Plaintiff's Notice.*  Next, Defendant contends that the content of Plaintiff's notice was insufficient because, among other things, Plaintiff "did not notify MPD of her anticipated time and duration of leave" and did not "make a reasonable effort to schedule necessary treatment in a manner that would not unduly disrupt the employer's operations."  Def.'s Mot. at 11, 12.  An employee must satisfy such requirements, however, only when the leave is foreseeable. On the other hand, when the need for leave is unforeseeable, the employee need only "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b).  When, as here, "an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." *Id.*  Having held that there exists a genuine dispute of material fact as to the foreseeability of Plaintiff's need for leave, the court has little trouble concluding that the content of Plaintiff's notice was adequate under the more relaxed notice standard for unforeseeable leave.

Here, if a jury were to determine that her need for leave was unforeseeable, it also could find that the content of Plaintiff's initial notice was adequate to support her FMLA claim.[3]  As discussed, Plaintiff attested that she left her supervisor a voicemail on December 21, 2011, alerting him that (1) she intended to take "extended medical leave," (2) her need to take leave arose "because of depression," and (3) she would be seeking leave at "[her] doctor's request."  Thomas

---

[3] It also was adequate to trigger her employer's obligation to determine if she qualified for FMLA leave.  *See* 29 C.F.R. § 825.303(b) ("The employer will be expected to obtain any additional required information through informal means."); *see also* 29 C.F.R. § 825.300(b)(1) (imposing eligibility notice obligations upon an employer "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason"); *Hodges*, 2016 WL 1222213 at * 10.

Aff. ¶ 31. If a jury were to conclude that Plaintiff left such voicemail—a fact that Defendant contests—it could find that Plaintiff satisfied the content of notice requirement under 29 C.F.R. § 825.303(b).

Defendant's Motion for Summary Judgment regarding Plaintiff's FMLA and DCFMLA unlawful denial claims is therefore denied.

## B.    Plaintiff's Retaliation Claim under the FMLA and DCMLA

Defendant also has moved for summary judgment on Plaintiff's claims for retaliation under the FMLA, Am. Compl. ¶¶ 81-88, and the DCFMLA, Am. Compl. ¶¶ 58-65. Def.'s Mot. at 15-17. Both statutes prohibit retaliation against an employee who (1) exercises, or attempts to exercise, any right provided under the statute, *see* 29 U.S.C. § 2615(a)(1); *Gordon*, 778 F.3d at 161 (recognizing a retaliation claim arising under § 2615(a)(1)); D.C. Code Ann. § 32-507(a); or (2) "oppos[es] any practice made unlawful" by the statute, 29 U.S.C. § 2615(a)(2); D.C. Code Ann. § 32-507(b)(2). Plaintiff has not specified the particular subsections under which she asserts her retaliation claims. However, because she has not offered any evidence showing that she "oppos[ed] any practice made unlawful" by the statute, the court will treat her retaliation claims as brought under § 2615(a)(1) of the FMLA and § 32-507(a) of the DCFMLA.

Plaintiff's retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Gordon*, 778 F.3d at 161 (observing that the court has "imported Title VII's prima facie case and burden-shifting regime to the FMLA retaliation context") (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365 (D.C. Cir. 2000)). The prima facie elements of a FMLA retaliation case, as to which Plaintiff bears the burden, are: "(1) the employee 'engaged in a protected activity under this statute'; (2) the employee 'was adversely affected by an employment decision'; and (3) 'the protected activity and the adverse employment action were

causally connected.'" *Id.* (quoting *Gleklen*, 199 F.3d at 1368). As in the Title VII context, if the plaintiff successfully establishes a *prima facie* case, the employer must then articulate a legitimate, nondiscriminatory reason for its actions. If the employer does so, the *prima facie* case drops out of the equation, and "[t]he 'one central inquiry' that remains is whether a reasonable jury could infer retaliation or discrimination from all the evidence." *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016) (citation omitted); *see also Joyce v. Office of the Architect of Capitol*, 106 F. Supp. 3d 163, 176 ("Because the [employer] has presented a non-retaliatory reason for changing his shift, therefore, it is Plaintiff's burden to show both this reason was pretextual and that his leave-taking was the real reason his shift was changed."). Courts should evaluate this question "in light of the total circumstances of the case," asking

> whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer.

*Nurriddin*, 818 F.3d at 759 (citations omitted).

Weighing the evidence, the court finds that there are genuine disputes of material fact as to whether retaliation was the reason for Plaintiff's termination. Defendant claims MPD placed Plaintiff on AWOL status on January 1, 2012, and decided to terminate her less than two weeks later, because she had not reported for work since December 21, 2011. Def.'s Mot. at 16-17. There are, however, two key factual disputes underlying the question of whether Plaintiff was properly put on AWOL status and subsequently terminated. The first, as already discussed, is whether Plaintiff provided adequate notice of her intent to take FMLA leave. Plaintiff says that she left Hudson a voicemail message notifying him about her need to take leave on December 21, 2011; Hudson did not recall receiving such a message. The second disputed issue concerns what

transpired between December 21, 2011, and December 31, 2011.  According to Hudson, he called

Plaintiff 13 times inquiring why she was not at work, Hudson Aff. ¶ 7—a contention corroborated

by an email from Hudson to his colleagues documenting his efforts, *see* Def. Mot., Ex. 11, Email

from Gregory Hudson to Karen Wiggins, ECF No. 23-11.  Plaintiff, however, generally denies

receiving such phone calls from Hudson.  Pl.'s Stmt. at 4; Thomas Aff. ¶¶ 33, 36 (attesting that

Hudson did not return her calls on December 21, 2011, or December 30, 2011).  These are material

factual disputes concerning the propriety of placing Plaintiff on AWOL status and subsequently

terminating her that only a jury can resolve.  If a jury were to decide either or both of these factual

disputes in Plaintiff's favor, it could infer that MPD's assertion that Plaintiff was AWOL from

work—when in fact she properly had requested leave—was a pretext for retaliating against her for

exercising her FMLA rights.

In addition to these factual disputes, the timing of Plaintiff's placement on AWOL status

and her termination gives rise to an inference of retaliation.  Hudson acknowledged that he knew

Plaintiff applied for FMLA leave on December 31, 2011, *see* Hudson Dep. at 99-100, yet Plaintiff

was placed on AWOL status the very next day.  Additionally, Plaintiff made the decision to

terminate Plaintiff on January 13, 2012—*before* she had a full opportunity to complete her leave

application by submitting a doctor's certification.  Although temporal proximity between a

protected action and the alleged retaliation, without more, is not enough to get Plaintiff past

summary judgment, *see Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("positive

evidence beyond mere proximity is required to defeat the presumption that the proffered

explanations are genuine"), here the closeness of the temporal proximity—less than two weeks—

when combined with the factual disputes underlying the stated reason for MPD's adverse

employment decision, warrant submitting Plaintiff's retaliation claims to a jury.

Defendant's Motion for Summary Judgment regarding Plaintiff's FMLA and DCFMLA retaliation claims is therefore denied.

### C. Plaintiff's Retaliation Claim under Title VII and the DCHRA

Finally, the court turns to Plaintiff's claims for retaliation under Title VII, 42 U.S.C. § 2000e-3(a) (2012), and the District of Columbia Human Rights Act (DCHRA), D.C. Code Ann. § 2-1401.01 *et seq* (West 2001). Those claims rest largely on a different, earlier set of events than those that give rise to her FMLA and DCFMLA claims. Plaintiff contends that she complained to her supervisors about unfair workplace treatment in July 2011 and August 2011 and then filed an internal complaint alleging sex discrimination at her workplace in September 2011. Am. Compl., ¶¶ 45, 69. As a consequence of those actions, Plaintiff asserts she suffered four types of adverse actions: (1) a Letter of Admonition dated September 29, 2011; (2) a write-up and finding of neglect of duty in mid-December 2011; (3) her classification as AWOL; and (4) her ultimate termination in January 2012. Am. Compl. ¶¶ 46, 70. Plaintiff's retaliation claims are analyzed under the same *McDonnell Douglas* framework discussed above. *McFadden*, 611 F.3d at 6.

Plaintiff's first two grounds for alleged retaliation—her complaints about her workplace treatment in July 2011 and August 2011—founder because Plaintiff has not shown them to be "protected activity" under Title VII. The "opposition" clause of Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter." 42 U.S.C. § 2000e-3(a). That clause "forbids retaliation by employers against employees who *report* workplace race or gender discrimination." *Crawford v. Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 273 (2009) (emphasis added); *id.* at 276 ("'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always

'constitutes the employer's *opposition* to the activity.'") (citations omitted). Here, Plaintiff has established only that she generally complained to supervisors about her workplace treatment; she has not, however, offered any proof that her complaints were rooted in discrimination based on her sex. With regard to the July 2011 incident, Plaintiff testified that she only protested to Captain Snyder about Hudson visiting her cubicle and raising his voice at her. Thomas Dep. at 25. She did not assert that Hudson had treated her in that manner because of her gender. *Id.* Likewise, with regard to the complaints she made in August 2011 about Hudson's behavior on July 26, 2011, Plaintiff again has not adduced evidence that she protested discriminatory treatment on the basis of her sex, as opposed to general uncouth workplace behavior. *See id.* at 29 (describing her email to Chief Newsham as complaining that she was being "harassed and bullied on a day-to-day basis and felt like it was an . . . uncomfortable situation"[4]); *id.* at 33 (describing a meeting held on August 10, 2011, concerning Hudson's behavior on July 26, 2011; Plaintiff testified that "I really didn't say too much. . . . I told her my version. Mr. Hudson told her his version. And that was it.").

That leaves Plaintiff's filing of an EEO complaint alleging sex discrimination in September 2011 as the only qualifying protected activity under Title VII. However, the court finds that no reasonable jury could find that Plaintiff was placed on AWOL status and then terminated in January 2012 *because* she had filed a complaint alleging sex discrimination months earlier. Plaintiff has offered a non-discriminatory reason for those actions—Plaintiff did not show up for work starting on December 21, 2011. Plaintiff, in turn, has offered no evidence to create a genuine dispute of material fact that those adverse actions occurred because she had complained about sex discrimination. For starters, at least three full months had passed between Plaintiff's EEO complaint and her placement on AWOL status. That length of time, without more, does not create

---

[4] The court relies on Plaintiff's description of the email, instead of the text of the email itself, because neither side has put the actual email, which was Exhibit 1 to Plaintiff's deposition, before the court.

an inference of retaliatory intent. *See, e.g., Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (observing that, although neither the Supreme Court nor the Court of Appeals has established a "bright-line three month rule," the "Supreme Court has cited circuit decisions "suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation"); *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 81 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015) (citations omitted) (finding that on its own, a three to four month gap between the protected activity and the adverse employment action is too great to establish an inference of causation).

Additionally, contrary to what Plaintiff contends, Defendant has not offered shifting explanations for placing her on AWOL status and ultimately terminating her. On the contrary, Defendant consistently has maintained those adverse actions were taken because she did not show up for work. And, although Plaintiff has offered sufficient proof to create a genuine dispute of material fact that her purported AWOL status was a pretext for retaliating against her for exercising her rights under the FMLA, the same cannot be said with respect to her filing of a sex discrimination complaint. Her filing of a sexual discrimination complaint and the adverse employment actions taken against her are too attenuated to give rise to a reasonable inference of retaliation in violation of Title VII.

Accordingly, the court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and DCHRA retaliation claims.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendant's Motion for Summary Judgment. Plaintiff's unlawful denial and retaliation claims under the FMLA and DCFMLA raise genuine issues of material fact that cannot be resolved on summary judgment.

The court finds no such genuine issues with respect to her retaliation claims under Title VII and the DCHRA.

Dated:  July 18, 2016

_____
Amit P. Mehta
United States District Judge